Good morning. My name is Joel Friedman. I'm an attorney in Phoenix. I'm here on behalf of the plaintiff, Dela Haislip. This is a much easier case than Mr. Caldwell's because this has nothing to do with depression. It's a fibromyalgia case. So brown cow, white cow, is that the argument, counsel? Fibromyalgia is much easier to analyze than depression. And all of you have been involved in cases where the claim for disability involves fibromyalgia. The seminal case in the Ninth Circuit is Beneke v. Barnhart, which Mr. Caldwell was the plaintiff's that this court is being asked by me to look exactly at what the ALJ wrote in her decision. Not what she could have written, but what she did write. And Judge Tallman, your decision in Connett v. Barnhart specifies that that is the rule. So what were the reasons that the ALJ gave? She said that Ms. Haislip was not disabled because she was not credible, and because not one, but two of her treating physicians, one of whom is a rheumatologist, were not credible and had made statements that intruded into the territory of the commissioner. The second point is not exactly what the commissioner's policy is, and it is not what this court has said ALJs are allowed to do when a physician says, my patient is disabled. The commissioner's attorney cited a Social Security ruling for the proposition that we just don't look at statements that a patient is disabled. That's not what the ruling says. The ruling 96-5P actually says that if a physician makes such a statement, the rules require that we make every reasonable effort to recontact such sources for clarifications when reasons for the opinion are not clear. One of the issues that has been presented to the court is that Ms. Haislip was not represented by counsel, and the presentation of her case was compromised by the failure of the ALJ to be specific what advantages, what disadvantages would occur with or without the representation of counsel. The ALJ did not follow up on that policy statement. The ALJ simply said, I'm not accepting their of the commissioner. Well, he said, or she, the ALJ says at one point, there's no credible evidence to support the degree of pain and fatigue alleged. She said repeated normal neurological examinations, all of her objective medical evidence has been unremarkable. In addition, the consultative examiner noted that palpation at the usual trigger points for fibromyalgia failed to elicit any pain. Instead, the claimant appointed to broad, unspecific areas on her body which is inconsistent with fibromyalgia. This lessens her credibility, et cetera, et cetera. So those are, aren't his observations along those lines substantial evidence? No, they're not because they're not accurate. Number one, the American College of Rheumatology diagnostic criteria, number one, is the presence of widespread pain, not localized pain, to diagnose fibromyalgia. Number two, if you read Dr. Schottstedt's report, she only reported doing tender point exams at the neck and shoulder. The American College of Rheumatology diagnostic criteria require a global assessment, above and below the waist, left and right. So for Dr. Schottstedt to refer simply to the upper body, neck and shoulder, is not a fibromyalgia exam. One of the more critical issues. I thought, maybe I misread the exhibit, but I thought that what the doctor was saying was that I palpitated the particular points that I'm supposed to examine and didn't get the wincing and that when I asked the patient to describe specifically where it hurt, I got these generalized answers. Did I misread the evidence? To the extent that Dr. Schottstedt's report, that you're interpreting it as her having done a complete fibromyalgia exam, that is not correct. Her report specifically refers to I asked a compound question. Let me take it in pieces. Did the doctor indicate that the patient had been general in describing the area in which the pain was emanating from? Yes. Okay. And did the doctor try to palpitate the 17 different areas that you're supposed to palpitate? Not from reading the actual report. You don't read it that I palpitated it, but I didn't get any reaction? No. What she says is that she examined the shoulders and neck. Isn't that where the points are located? That's two of the 18. Yeah. But there are 16 more, including the lower body and the left side. Ms. Haisluck's problems were the right side of her neck and right shoulder from fibromyalgia. Keep in mind, she also had headaches. Her headaches were improved with medication. Her headaches were not improved with medication. What are we to make of her statement that she had some of her migraines that lasted for very brief periods and the reaction of the fact finder, well, wait a minute, migraines don't last for moments? The judge's description is inaccurate. I have a computer, and I have the entire record in my computer. I OCRed it, and I searched for the word seconds. There are six references to the word seconds. Not one of them refers to migraine headaches lasting for seconds. Ms. Haisluck did one time indicate that her headaches sometimes lasted for a few minutes to full day, and that actually was Dr. Schottstadt's report at page 192 of the excerpt. There is nothing that refers to her telling a doctor or telling the judge that her migraines potentially lasted only a matter of seconds. The Imitrex, which Ms. Haisluck was prescribed, is designed to relieve the headaches, but it does take a while, and it is not immediately effective. So I don't know what the medical definition of a migraine is, but is it your position that a migraine can only last for a few minutes? What I will tell you is that every single doctor, including Dr. Schottstadt, and I'd like to keep a little bit of time for rebuttal, even Dr. Schottstadt diagnosed migraine headaches as a component of the fibromyalgia. But the issue, counsel, is whether or not your client was being truthful, and if she's describing a migraine that lasts for only a few minutes, that doesn't sound like a migraine headache to me. That might be a headache from another type of a headache, but a migraine headache, as I understand it, is a very specific medical ailment. Ms. Haisluck did not diagnose migraine headaches, and if you look at the record, there were references to other types of headaches at other times. The primary diagnosis was fibromyalgia-related headaches, whether they're migraines or not migraines. I would like to make one point about the ALJ's summary of Ms. Haisluck's description of her problems. Highlight, the sleep study. The judge said Ms. Haisluck reported that it felt like she only slept for five hours, and in fact she slept for 318 minutes. Do the math. Is that five hours and 18 minutes? Correct. She's pretty close. Very close. She did say that she thought it took her 20 minutes to fall asleep. The study showed that it took her only four minutes. That's the point of the study, to find out. In fact, though, that study was abnormal. In fact, every doctor has diagnosed fibromyalgia, including Dr. Schottstadt, and only two doctors, Dr. Eng and Dr. Fairfax, indicated how the fibromyalgia was likely to affect Ms. Haisluck. Both of them said it would disable her. Let's hear from the government, and then we'll give you a chance to respond. Good morning. My name is John Cusker, and I represent Michael J. Astrew, the Commissioner of Social Security. The ALJ found that the claimant has fibromyalgia. The primary issues in this case are whether the administrative law judge correctly resolved conflicts involving medical evidence and the credibility of the claimant. We submit that the ALJ's resolution of those conflicts was supported by substantial evidence and legally correct. I'd like to begin by trying to distinguish the Beneke case, which we addressed in our brief. Beneke court had to decide whether a district court remand was an abuse of discretion. The court found, the district court found that the ALJ decision in that case had improperly evaluated both medical evidence and the claimant's credibility. The government did not dispute those findings on appeal. So, as the Beneke court noted, it considered those errors only for the purpose of determining whether remand for payment was appropriate under the Harmon rule. The point I wish to make about this is that the Beneke case did not make new law regarding the evaluation of fibromyalgia under the Social Security Act and this court's precedence. A claimant must first establish a medically determinable impairment, which we agree is fibromyalgia. But nonetheless, under the Act, the claimant can't be found disabled based solely upon subjective symptoms. And the ALJ is required to evaluate both the medical evidence and the subjective symptoms according to the Commissioner's regulations. In this case, the ALJ found that there were conflicts involving the claimant's subjective symptoms. I think it would be fair to say that the ALJ probably concluded that the claimant was exaggerating her symptoms. So the point of the sleep study that was discussed earlier is that the claimant's perception was off. Not that she was being untruthful, but that her perception was that she was taking longer to fall asleep than she actually did. And that she slept longer than she thought she did. And a little bit longer than she thought she had. But there were other inconsistencies in the record also. The claimant insists that she has migraine headaches more frequently than the actual medical evidence shows that she does. The medical findings reported by her treating doctor show that the headaches are actually becoming less frequent, that they're responding to medication. And the ALJ properly relied upon that evidence. The evidence regarding trigger points is interesting because it was not only Dr. Schoenstatt who found them absent on examination, but while preparing for this argument, I noticed that Dr. Fairfax had also recorded at administrative record page 224 that there were zero trigger points and zero objective findings when he examined the claimant. So again, the ALJ promptly concluded that there was some evidence of exaggeration here. The claimant also said she had a neurocognitive disorder, but no one had ever ordered or even suggested that the claimant go to see a mental health professional in order to have that alleged disorder evaluated. So we would submit that the ALJ's rationale was specific, legitimate, and supported by substantial evidence. With regard to the medical opinion evidence, here the ALJ found first he had to deal with conclusory statements on the ultimate issue of disability, which were not binding upon the judge. But the ALJ also noted that there were conflicts in the medical evidence. This is treating source evidence that tended to undermine the opinions of Drs. Eng and Fairfax, who had both stated in conclusory fashion that the claimant was disabled. So the ALJ also notes that those opinions are not well supported by their own clinic findings. Again, I point to Dr. Fairfax's findings, which varied from time to time, and we also have conflicting reports regarding the migraine headaches, and we have some conflict with the findings of Dr. Schoenstatt, the consulting examiner. The ALJ resolved the conflict and decided he would not give any weight to the opinions of Drs. Eng and Fairfax. Instead, he promptly relied upon the opinion of the state agency's doctors. The issue is not whether he rejected the treating sources because of the non-examining doctor's opinion. That's not what the ALJ said that he did. But having for other specific and legitimate reasons rejected the treating source opinions, the ALJ did promptly rely upon the non-examining doctor's opinions, which were, as their notes indicate, supported by treating source evidence, and which the regulations state the ALJs must address and may rely upon because of those doctors' expertise in dealing with social security disability issues. Let me ask you whether you've been able to find in the record any statement by the claimant that her migraines lasted only seconds. Seconds show up in quotation marks, of course, in the ALJ's order. Your Honor, I didn't search for that term, and I can't say whether it's in there or not. So as far as you're concerned, she didn't say it? I don't know. The ALJ believed that she said it. But if the ALJ believed it and it's wrong, then we've got a problem. Does the record reflect that? I can't say. But I would say that the ALJ articulated enough other very good reasons for rejecting the claimant's credibility. He doesn't reject the claimant's credibility entirely. He finds her partially credible, but he finds that some of the allegations she makes are exaggerated or not supported by objective evidence. And it's interesting to note that the ALJ picks out a particular written statement that the claimant made. It's a checkbox form in which she indicates certain things that she does. And this reference is on ‑‑ if you'll allow me a second. It's on page 28 of the transcript, and it's page 5 of the ALJ's decision. He states that she indicated she could lift a glass to her mouth, walk outdoors, turn faucets on and off, and get in and out of a car without difficulty. What the ALJ is pointing out to are that the claimant is indicating she can use her arms to lift a glass, that she can use her legs and feet to walk, that she can use her hands and wrists to turn a faucet, and that she can bend and stoop sufficiently to get in and out of a car without difficulty. I think that's the reason why he picks that particular exhibit, which is page 218. And, Judge, if you'll allow me a second, I may be able to answer ‑‑ Judge Fletcher, I may be able to answer your earlier question. I have a reference to seconds. The ALJ seems to have cited, as his support for that, exhibit 5E, which begins on page 127 of the record. I've run out of time, and I can't say that this citation would be in there, but it's possible that you might look for it there. Okay. Thank you. Thank you. I'll be fast. 5E does not have any use ‑‑ the word seconds does not appear in exhibit 5E, period. The inconsistencies ‑‑ I'm glad that Mr. Cusker brought up this checklist form that Ms. Haislip filled out for her doctor. It does not say what the judge said it does. It said she could lift a glass to her mouth. If that's proof of ability to work, I'll leave now. Every other thing that Ms. Haislip checked off said she could do them with some difficulty, not without difficulty, with some difficulty. That's at exhibit excerpt page 85, transcript 258, walking outdoors, turning faucets on and off, picking up clothes from the floor, getting in and out of the car, dressing herself. That's fibromyalgia. It is not a neurological disorder. Fibro fog is a known element of fibromyalgia. It is not a neurological disorder. MRIs are going to be negative. EMGs are going to be negative. Diagnostic testing being negative is part of the diagnosis of fibromyalgia. This court in Morgan v. Mukasey, an immigration case that Judge Fletcher, you were on the panel, gave a great description of how you look at supposed inconsistencies. The inconsistencies have to be material. They have to be unexplained. The claimant has to be given a chance to explain inconsistencies, not ambushed by them. That did not happen here. This ALJ did not. This ALJ did not find Ms. Haislip partially credible. She flat out rejected everything that she told her. The ALJ flat out rejected everything that Dr. Eng and Dr. Fairfax said. They knew what her history was. They are doctors. The ALJ is not. They are more qualified to determine the significance of the fibromyalgia on Ms. Haislip's ability to work. Thank you. Okay. Thank both of you for your helpful arguments. Haislip v. Astra is now submitted for decision. The next case on the argument calendar is CBC Financial v. Apex Insurance Managers et al.
judges: Fletcher, Tallman, Bertelsman